# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IOMAXIS, LLC, <br><br> Plaintiff, <br><br> -against- <br><br> NICHOLAS HURYSH, JR. and <br> HILLCREST FARM, LLC, <br><br> Defendants. | Civil Action No. 8:20-cv-03612-PJM |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF IOMAXIS, LLC'S MOTION FOR AN ORDER TO SHOW CAUSE, PRELIMINARY INJUNCTION, AND <u>EXPEDITED DISCOVERY</u>

TROUTMAN PEPPER HAMILTON SANDERS LLP

John C. Lynch (Md. Bar No. 12963)
M. Kelly Tillery (pro hac vice) Mary Grace W. Metcalfe (pro hac vice)
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
Telephone: (757) 687-7500
Facsimile: (757) 687-7510
john.lynch@troutman.com
kelly.tillery@troutman.com
marygrace.metcalfe@troutman.com

112134209

## TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ................................................................................................ 1

II. FACTUAL BACKGROUND .................................................................................................. 2

III. ARGUMENT .......................................................................................................................... 3

    A.    An Order to Show Cause and Scheduling a Hearing Should be Issued on the Replevin Claim ................................................................................................ 3

    B.    IOMAXIS Is Entitled to a Preliminary Injunction to Restrain Defendants from the Use, Dissemination, or Destruction of IOMAXIS' Information ............. 6

        1.    IOMAXIS is likely to succeed on the merits ............................................ 7

            a.    The Information in Question Constitutes Trade Secrets under both the DTSA and the MUTSA ......................................... 8

            b.    Hurysh Misappropriated IOMAXIS' Trade Secrets .................... 10

        2.    IOMAXIS will face immediate and irreparable harm in the absence of preliminary relief ................................................................................ 12

        3.    The Balance of Hardship Weighs in Favor of the Preliminary Injunction ................................................................................................ 12

        4.    The Preliminary Injunction Is in the Public Interest ............................... 14

    C.    An Order Compelling Expedited Discovery Should Be Granted to Assist the Court in Ruling on the Preliminary Injunction ............................................. 14

IV. CONCLUSION ..................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AirFacts, Inc. v. de Amezaga*,
   909 F.3d 84 (4th Cir. 2018) ..............................................................................................5

*Albert S. Smyth Co. v. Motes*,
   No. CV CCB-17-677, 2018 WL 3635024 (D. Md. July 31, 2018),
   reconsideration denied, No. CV CCB-17-677, 2020 WL 4471869 (D. Md.
   Aug. 3, 2020) ....................................................................................................................6

*Brightview Grp., LP v. Teeters*,
   441 F. Supp. 3d 115 (D. Md. 2020) ........................................................................ passim

*DTM Research, L.L.C. v. AT & T Corp.*,
   245 F.3d 327 (4th Cir. 2001) .........................................................................................10

*GE Commercial Distribution Fin. Corp. v. E.D.'s Small Engine Repair, Inc.*,
   2014 WL 587440, at *2 (D. Md. Feb. 14, 2014 .............................................................4

*Griaznov v. J-K Techs., LLC*,
   No. CV ELH-16-2522, 2018 WL 4353989 (D. Md. Sept. 11, 2018) ............................3

*L'Occitane, Inc. v. Trans Source Logistics, Inc.*,
   No. CIVA WMN-09-CV-2499, 2009 WL 3746690 (D. Md. Nov. 2, 2009) ..........11, 12

*LeJeune v. Coin Acceptors, Inc.*,
   381 Md. 288, 849 A.2d 451 (2004) ..............................................................................6, 7

*Motor City Bagels, L.L.C. v. Am. Bagel Co.*,
   50 F. Supp. 2d 460 (D. Md. 1999) ...............................................................................5, 6

*NaturaLawn of Am., Inc. v. W. Grp., LLC*,
   484 F. Supp. 2d 392 (D. Md. 2007) ............................................................................8, 10

*Open Text Corp. v. Grimes*,
   262 F. Supp. 3d 278 (D. Md. 2017) ..............................................................................12

*Padco Advisors, Inc. v. Omdahl*,
   179 F. Supp. 2d 600 (D. Md. 2002) ................................................................................6

*Philips N. Am. LLC v. Hayes*,
   No. CV ELH-20-1409, 2020 WL 5407796 (D. Md. Sept. 9, 2020) .............................7

*Precigen, Inc. v. Shuyuan Zhang*,
    No. GJH-20-1454, 2020 WL 3060398 (D. Md. June 9, 2020) ................................... 3, 8, 9, 10

*SEA, Ltd. v. Cornetto*,
    No. CV JKB-18-1761, 2018 WL 3009104 (D. Md. June 15, 2018) ........................................ 12

*Sys. 4, Inc. v. Landis & Gyr, Inc.*,
    8 F. App'x 196 (4th Cir. 2001) ............................................................................................... 7

*Teksystems, Inc. v. Spotswood*,
    No. CV RDB 05-1532, 2005 WL 8174397 (D. Md. June 29, 2005) .............................. 8, 9, 12

*Zeigler Auto Grp. II, Inc. v. Chavez*,
    No. 19-CV-02748, 2020 WL 231087 (N.D. Ill. Jan. 15, 2020) ................................................ 8

**Statutes**

18 U.S.C.A. § 1839 ........................................................................................................................ 7

Defend Trade Secrets Act ......................................................................................................... 1, 4

Maryland Uniform Trade Secrets Act ....................................................................................... 1, 4

Md. Code Ann., Com. Law § 11-1201(e) ..................................................................................... 7

**Other Authorities**

Fed. R. Civ. P. 26(d) .................................................................................................................... 11

Fed. R. Civ. P. 26(f) ............................................................................................................... 11, 12

## I. PRELIMINARY STATEMENT

Defendant Nicholas Hurysh, Jr., a former employee of Plaintiff IOMAXIS, LLC ("IOMAXIS"), has gone rogue. Following his termination, Hurysh retained possession of IOMAXIS' property, including the registration domain names used in the course of its business, and thousands of dollars of physical equipment and technology. Most concerningly, however, Hurysh constructed an unauthorized means of remotely accessing IOMAXIS' proprietary and confidential information. This gave both Hurysh and his farming business, Defendant Hillcrest Farm, LLC ("Hillcrest Farm"), the ability to access, copy, modify, and delete information that is protected under both the federal Defend Trade Secrets Act ("DTSA") and the Maryland Uniform Trade Secrets Act ("MUTSA"). Hurysh also retains copies of confidential information and trade secrets he made while an employee of IOMAXIS. Some of this information is stored on the physical equipment and technology Hurysh took from IOMAXIS, which is currently located on Hillcrest Farm's premises.

In the time leading up to his termination, Hurysh used his position at IOMAXIS to deliberately destroy evidence of his activities. Since his termination, he has deleted information concerning his use of IOMAXIS equipment before returning it. Moreover, Hurysh has refused to return IOMAXIS' property or information, including trade secrets, and has repeatedly refused to certify that he will not use or disseminate IOMAXIS' confidential information, including trade secrets, going forward.

IOMAXIS has filed a Verified Complaint against both Hurysh and Hillcrest Farms, bringing claims under the DTSA and MUTSA, as well as a common law claim for replevin. *See* Doc. 1. However, the continued retention of IOMAXIS' confidential information, including trade secrets, by either or both of the Defendants poses a serious and immediate threat to IOMAXIS and its business operations. Moreover, Hurysh's spoliation and deliberate obfuscation of his activities

1

both makes it impossible for IOMAXIS to determine the scope of Hurysh's malfeasance, and also illustrates the ongoing risk present while Hurysh is in possession of any property, equipment or information that rightfully belongs to IOMAXIS. IOMAXIS therefore respectfully requests that this Court enter an order scheduling a hearing on the replevin claim and providing Defendant Hurysh and Defendant Hillcrest Farm the required notice under Maryland law; issue a preliminary injunction prohibiting the dissemination or use of IOMAXIS' confidential information and trade secrets by Defendant Hurysh or Defendant Hillcrest Farm; and order expedited discovery related to Hurysh's acquisition and retention of IOMAXIS property and in aid of the preliminary injunction.

## II.  FACTUAL BACKGROUND

The underlying facts of this matter, which are laid out in the Verified Complaint, are summarized again here. *See* Doc. 1. For over fifteen years, Defendant Hurysh, an experienced cyber security expert, worked at IOMAXIS as a network engineer. *Id.* at ¶¶ 13-15. Following his termination in September 2020, IOMAXIS discovered that Hurysh, improperly and without authorization, constructed an electronic network pathway (the "Tunnel") from Defendant Hillcrest Farm into IOMAXIS' financial system. *Id.* at ¶¶ 23-24. This Tunnel enabled both Defendants to access and acquire IOMAXIS' accounting and financial records, employee and personnel files, customer information and contracts, vendor records, other highly confidential and proprietary information, and trade secrets. *Id.* at ¶ 25. In addition, Defendant Hurysh has improperly retained copies of IOMAXIS' email and financial systems – which contained accounting and financial records; capital investments; marketing, sales and business strategies; pricing models; employee personal information; customer information and contracts; vendor records; technical configurations and associated documentation; and account access credentials – as well as the registrations for and access to a number of domain names owned by IOMAXIS. *Id.* at ¶¶ 20-22,

2

28-36. Hurysh was never authorized to retain this information or use it for his own devices. *Id.* Defendants Hurysh and Hillcrest Farm are, additionally, in possession of thousands of dollars of technology and equipment that belongs to IOMAXIS and upon which IOMAXIS' confidential information is saved. *Id.* at ¶¶ 37-44., 59.

Hurysh has used his background and position at IOMAXIS to attempt to cover his tracks. *Id.* at ¶¶ 45-48. As a network engineer at IOMAXIS, Defendant Hurysh was responsible for creating and maintaining logs detailing access of IOMAXIS' accounting system, financial records, personnel files, and other confidential information. *Id.* Defendant Hurysh deliberately disabled or deleted the logs which would show what financial, employee, and accounting information he accessed, copied, or otherwise acquired. *Id.*

Hurysh has no legitimate interest in IOMAXIS' confidential information, including trade secrets. Despite this, Hurysh has repeatedly refused to identify what information and property he has taken from IOMAXIS, or to confirm that he will not copy, disseminate, or otherwise use IOMAXIS' confidential information, including trade secrets. *Id.* at ¶¶ 27, 57-59.

Moreover, Defendant Hurysh has now reportedly left town and his counsel, with whom counsel for IOMAXIS had previously been communicating regarding the retention of IOMAXIS' property and information by Hurysh and Hillcrest Farm, has not replied to counsel for IOMAXIS since the Verified Complaint was filed. *See* Docs. 8-1; 8-3; 8-5; 8-6. Immediate intervention is necessary to protect the status quo and the interests of IOMAXIS.

### III. ARGUMENT

**A.    An Order to Show Cause and Scheduling a Hearing Should be Issued on the Replevin Claim**

"Under Maryland law, replevin allows a person claiming the right to immediate possession of personal property to file an action for possession before judgment." *Griaznov v. J-K Techs.,*

*LLC*, No. CV ELH-16-2522, 2018 WL 4353989, at *24 (D. Md. Sept. 11, 2018) (internal quotation marks and brackets omitted) (collecting cases).  To initiate an action for replevin, a plaintiff must file a complaint containing "(1) a description of the property claimed and an allegation of its value, (2) an allegation that the defendant unjustly detains the property, (3) a claim for return of the property, and (4) any claim for damages to the property or for its detention".  MD R PROP ACT Rule 12-601(c).  In addition to the complaint and summons, a notice is then issued to the defendant which, among other things, serves to "indicate the date of the hearing on the right to possession before judgment, which may not be less than seven days after service of the notice on the defendant unless the court orders otherwise" and "warn the defendant that the court may grant the plaintiff's request for possession before judgment and direct the sheriff to place the plaintiff in possession of the property unless the defendant appears personally and shows cause why the property described in the complaint should not be immediately returned to the plaintiff."  MD R PROP ACT Rule 12-601(d)(2).  *See also GE Commercial Distribution Fin. Corp. v. E.D.'s Small Engine Repair, Inc.,* 2014 WL 587440, at *2 (D. Md. Feb. 14, 2014).  The Maryland Rules further provide that the "hearing shall be held as scheduled and shall proceed *ex parte* if the defendant fails to appear in response to the notice."  MD R PROP ACT Rule 12-601(f).

IOMAXIS has filed a Verified Complaint containing the information required in Rule 12-601(c).  As laid out therein, IOMAXIS has identified intellectual property that belongs to IOMAXIS but has been retained by Defendant Hurysh, including the Back-Up[1] Hurysh created of IOMAXIS' entire email and financial system, as well as the following domain names:

- iomaxis.net
- iomaxis.com

---

[1] All capitalized terms not defined herein take the definitions laid out in the Verified Complaint in this matter.  *See* Doc. 1.

4

112134209

- iomaxis.org

- iqmax.com

- dodpr.us

- techsilo.com

- ingressive.com

- penumbri.com

- penumbri.net

- penumbri.info

Doc. 1 at ¶¶ 20-21, 28-36. IOMAXIS also identified physical personal property that belongs to IOMAXIS but is currently in the possession of either Defendant Hurysh or Defendant Hillcrest Farms, specifically

- Four Dell 430 Servers;
- Four Hynix Chip Server Memory cards;
- Four Intel E-52623 v3 3.0 GHz Quad Core Processors;
- Two Cisco Network Security Firewall Appliances;
- Two Cisco Rack Mount Kits;
- One LACIE 4TB Rugged Raid Pro 3 USB-C ZML;
- One Microsoft Windows Server;
- One MacBook Pro, mbp 15.4 sg/2.3ghz/32gb/rp560x/1TB, serial number C02XG1C9JG5K; and
- One LaserJet Pro 500 Color MFP M570dn Printer

as well as the purchase prices of each item. *Id.* at ¶¶ 37-44. Additional proof of IOMAXIS' right to the immediate possession of the physical personal property identified therein is attached as

5

exhibits to the Affirmation of M. Kelly Tillery ("Tillery Affirmation") submitted in support of this motion.  *See* Tillery Affirmation, Exhibit A.

Of all the property identified in the Verified Complaint, Defendant Hurysh has asserted an ownership interest only in the MacBook Pro laptop computer (the Laptop").  Doc. 1 at ¶¶ 40, 42.  While IOMAXIS disputes this ownership interest, IOMAXIS understands that Defendant Hurysh may have personal information and attorney-client communications saved to the Laptop.  *Id.* at ¶ 41; Doc. 8-6.  IOMAXIS has no interest in this information and agrees that such information, but only such information, should be removed and logged before the laptop is returned.  *See* Doc. 8-6.  IOMAXIS therefore suggests that the Laptop be impounded with the Court immediately to preserve the status quo and protect the IOMAXIS information stored upon it, but that thereafter the parties attempt to mutually agree to the process by which Defendant Hurysh's personal information and attorney-client communications may be safely and securely removed.

Accordingly, IOMAXIS requests that this Court issue IOMAXIS' proposed Order to Show Cause in Action of Replevin[2], issue notice to Defendant Hurysh and Defendant Hillcrest Farm as required under Maryland law, and schedule a hearing on IOMAXIS' claim for replevin.  *See* Tillery Affirmation, Exhibit B.

**B.    IOMAXIS Is Entitled to a Preliminary Injunction to Restrain Defendants from the Use, Dissemination, or Destruction of IOMAXIS' Information**

"A preliminary injunction is warranted when the movant demonstrates four factors: (1) that the movant is likely to succeed on the merits, (2) that the movant will face irreparable harm in the absence of preliminary relief, (3) that the balance of equities favors preliminary relief, and (4) that injunctive relief is in the public interest."  *Brightview Grp., LP v. Teeters*, 441 F. Supp. 3d 115,

---

[2] A copy of the proposed Order to Show Cause in Action of Replevin attached as Exhibit B to the affirmation of M. Kelly Tillery

128 (D. Md. 2020) (citing *League of Women Voters of N C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014) ("Plaintiffs must demonstrate that (1) they are likely to succeed on the merits; (2) they will likely suffer irreparable harm absent an injunction; (3) the balance of hardships weighs in their favor; and (4) the injunction is in the public interest.")).

As set out in the Verified Complaint, Hurysh, as an employee of IOMAXIS, misappropriated confidential information, including trade secrets, from IOMAXIS and destroyed evidence of his activities. He has refused to return the misappropriated information or to certify that he will not use or disseminate it in the future. These circumstances clearly warrant a preliminary injunction to preserve the status quo. *Precigen, Inc. v. Shuyuan Zhang*, No. GJH-20-1454, 2020 WL 3060398, at *2 (D. Md. June 9, 2020) (preliminary injunction granted where employee took trade secrets, failed to return equipment, and reset electronic devices); *Brightview Grp., LP*, 441 F. Supp. 3d at 128 (preliminary injunction issued where employees misappropriated trade secrets).

    **1.**    **IOMAXIS is likely to succeed on the merits**

As laid out in the Verified Complaint in this matter, Defendant Hurysh misappropriated IOMAXIS' confidential information, including trade secrets, in violation of the Defend Trade Secrets Act ("DTSA") and the Maryland Uniform Trade Secrets Act ("MUTSA"). "To establish misappropriation of a trade secret under federal law and Maryland state law, [an employer] must demonstrate that the documents at issue are trade secrets, and that [the former employee] misappropriated those trade secrets." *Brightview Grp., LP*, 441 F. Supp. 3d at 129 (citing 18 U.S.C. §§ 1836(b)(1), 1839(3), 1839(5); Md. Code Ann., Com. Law § 11-201(c)). Here, the facts as laid out in the Verified Complaint show that IOMAXIS is likely to establish both points and thus to succeed on the merits.

112134209

### a. The Information in Question Constitutes Trade Secrets under both the DTSA and the MUTSA

The confidential information Hurysh has taken from IOMAXIS constitutes a trade secret under both the DTSA and the MUTSA. "'[A]ll forms and types of financial, business, scientific, technical, economic, or engineering information,' regardless of whether it is tangible or intangible, or how the information is stored, memorialized, or maintained, can qualify for protection as a 'trade secret' under the federal Defend Trade Secrets Act" and information qualifies as "a trade secret if (1) the owner of the trade secret takes 'reasonable measures to keep such information secret,' and (2) the information 'derives independent economic value ... from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure of use of the information.'" *Brightview Grp., LP*, 441 F. Supp. 3d at 129 (quoting 18 U.S.C. § 1839(3)).

"Similarly, the Maryland Uniform Trade Secrets Act defines a 'trade secret' as any information that the owner '[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use,' and takes reasonable efforts to maintain its secrecy.'" *Brightview Grp., LP*, 441 F. Supp. 3d at 129 (quoting Md. Code Ann., Com. Law § 11-1201(e)). In Maryland, "a trade secret can be identified by: '(1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount or effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.'" *AirFacts, Inc. v. De Amezaga*, 909 F.3d 84, 95 (4th Cir. 2018) (quoting Restatement (First) of Torts § 757). "Stated

8

112134209

succinctly, 'to be protected under Maryland law, information must be secret, and its value must derive from the secrecy. In addition, the owner of the information must use reasonable efforts to safeguard the confidentiality of the information.'" *Motor City Bagels, L.L.C. v. Am. Bagel Co.*, 50 F. Supp. 2d 460, 478 (D. Md. 1999) (quoting *Montgomery County Ass'n of Realtors, Inc. v. Realty Photo Master Corp.*, 878 F. Supp. 804, 814 (D.Md.1995), aff'd, 91 F.3d 132, 1996 WL 412584 (4th Cir.1996)).

Here, Hurysh has retained a copy of IOMAXIS' entire email and financial system and created an unauthorized electronic network pathway to provide himself with access to other confidential IOMAXIS documents, including accounting and financial records, capital investments, marketing, sales and business strategies; pricing models; employee personal information; customer information and contracts, vendor records, technical configurations and associated documentation, and account access credentials. Doc. 1 at ¶¶ 20-25, 68, 74. This information, which IOMAXIS took steps to protect and Hurysh accessed and retained without authorization, is exactly the sort of information this Court has recognized as being protected by both the DTSA and the MUTSA. *Albert S. Smyth Co. v. Motes*, 2018 WL 3635024, at *3 (D. Md. July 31, 2018), reconsideration denied, 2020 WL 4471869 (D. Md. Aug. 3, 2020) ("books and records, including customer records, employment records, business plans, pricing information, [and] vendor lists" to which access was restricted constituted trade secrets under DTSA); *Motor City Bagels, L.L.C.*, 50 F. Supp. 2d at 479 ("the plaintiffs' extensive compilation of information and analysis in their business plan qualifies as a trade secret" under MUTSA because "[w]hile the business plan at issue in the case at bar does contain some public information and facts ascertainable from the marketplace, it likewise includes personal insights and analysis brought to bear through diligent research and by marshaling a large volume of information"); *Padco Advisors,*

*Inc. v. Omdahl*, 179 F. Supp. 2d 600, 603 (D. Md. 2002) (applying MUTSA to a "protected customer database"); *LeJeune v. Coin Acceptors, Inc.*, 381 Md. 288, 311, 849 A.2d 451, 465 (2004) ("the trial court appropriately determined that the specifications of the [product] as well as the pricing and cost data contained on the Specialty Markets Strategic Plan, Executable Budgeting Software, and other hard-copy pricing documents qualify as trade secrets under MUTSA"); *Brightview Grp., LP*, 441 F. Supp. 3d at 130 ("financials" and "proprietary formulas and data" to which access was restricted constitute trade secrets under DTSA and MUTSA).

### b.  Hurysh Misappropriated IOMAXIS' Trade Secrets

"[T]he Defend Trade Secrets Act provides that a trade secret can be misappropriated when a person either (1) acquires a trade secret while knowing, or having reason to know, that the trade secret was acquired by improper means, or (2) uses or discloses the trade secret after acquiring it through improper means.  Maryland defines misappropriation in 'substantially the same manner.'" *Brightview Grp., LP*, 441 F. Supp. 3d at 132  (internal citations omitted) (quoting *Md. Physician's Edge, LLC v. Behram*, No. DKC-17-2756, 2019 WL 4573417, at *5 (D. Md. Sept. 20, 2019)). Thus, a plaintiff can state a claim for misappropriation simply by demonstrating that the defendant acquired its trade secret by improper means, even if the plaintiff cannot show use of that trade secret." *SYSTEMS 4, Inc. v. Landis & Gyr, Inc.*, 8 F. App'x 196, 200 (4th Cir. 2001) ("If [plaintiff] could demonstrate that [defendant] acquired its proposal through improper means, it would be entitled to proceed on its misappropriation claim regardless of whether [defendant] actually used any of the trade secrets contained in the proposal."); *See also DTM Research, L.L.C. v. AT&T Corp.*, 245 F.3d 327, 332 (4th Cir. 2001)  ("A misappropriation occurs when one acquires the secret information 'by improper means' or discloses the secret information acquired by 'improper means.'").  Such improper means include "theft, bribery, misrepresentation, breach or inducement

10

112134209

of a breach of a duty to maintain secrecy, or espionage through electronic or other means". 18 U.S.C.A. § 1839.  *See also* Md. Code Ann., Com. Law § 11-1201(e) (same).

Hurysh, without authorization, has accessed, copied, and retained IOMAXIS's trade secrets, including by constructing his unauthorized tunnel into the IOMAXIS' financial system. Doc. 1 at ¶¶ 20-25, 68, 74.  This is exactly the sort of improper access that constitutes misappropriation under the DTSA and MUTSA.  *Philips N. Am. LLC v. Hayes,* 2020 WL 5407796, at *10 (D. Md. Sept. 9, 2020) ("Plaintiff's allegations are readily sufficient to constitute misappropriation under federal and State law" where employee "accessed, downloaded, and printed [employer's] confidential documents … without any business justification for doing so"); *LeJeune*, 381 Md. at 314–15 (2004) ("LeJeune selected specific, confidential Coinco documents and actively transferred them from the Coinco laptop to a CD that he intended to keep for his personal use.  After transferring the files, LeJeune then erased over four hundred files from the laptop.  This suggests that LeJeune was attempting to hide his conduct … .  The evidence in this case is sufficient to support the Circuit Court's finding that LeJeune acquired Coinco's trade secrets by improper means."); *NaturaLawn of Am., Inc. v. West Grp., LLC*, 484 F. Supp. 2d 392, 399 (D. Md. 2007) ("defendants have misappropriated plaintiff's trade secrets by using [plaintiff]'s specially designed computer software, both to utilize products and in order to gain customer lists"). *See also Zeigler Auto Grp. II, Inc. v. Chavez*, 2020 WL 231087, at *5 (N.D. Ill. Jan. 15, 2020) ("courts have found similar unauthorized access of a company's electronic trade secrets to constitute misappropriation" under DTSA).

Because IOMAXIS is likely to establish both that Hurysh misappropriated confidential information and that the information in question constitutes trade secrets under the DTSA and the MUTSA, a preliminary injunction is appropriate in this matter.  *Brightview Grp., LP v. Teeters*,

11

441 F. Supp. 3d 115 (D. Md. 2020); *Precigen, Inc. v. Shuyuan Zhang*, 2020 WL 3060398, at *1 (D. Md. June 9, 2020).

### 2. IOMAXIS will face immediate and irreparable harm in the absence of preliminary relief

Hurysh's conduct and the information he has misappropriated, by their nature, establish the risk of irreparable harm to IOMAXIS. "Courts have recognized that the potential for the loss of trade secrets … demonstrates irreparable harm because '[a] trade secret once lost is, of course, lost forever.'" *Teksystems, Inc. v. Spotswood,* 2005 WL 8174397, at *5 (D. Md. June 29, 2005) (quoting *FMC Corp. v. Taiwan Tainan Giant Indus. Co.*, 730 F.2d 61, 63 (2d Cir. 1984)). *See also Precigen, Inc. v. Shuyuan Zhang*, 2020 WL 3060398, at *2 (D. Md. June 9, 2020) (quoting same). Moreover, where a former employee's retention and threatened use of trade secrets are ongoing, the defendant's "continuing activities constitute an actual and imminent threat of irreparable harm to [the employer's] business that would not be adequately addressed by an award of money damages." *Teksystems, Inc. v. Spotswood*, 2005 WL 8174397, at *5 (D. Md. June 29, 2005). Here, Hurysh has misappropriated IOMAXIS's trade secrets, refused to return them, and refused to certify that he will not use or disseminate them. *See* Doc. 1 at ¶¶ 20-27. IOMAXIS faces irreparable harm and a preliminary injunction is necessary. *Brightview Grp., LP*, 441 F. Supp. 3d at 139 (preliminary injunction necessary where former employee was "noncommittal about whether he would disclose and/or use [employer's] information moving forward").

### 3. The Balance of Hardship Weighs in Favor of the Preliminary Injunction

In determining whether to issue a preliminary injunction, courts should consider the "balance of the equities", namely the harm that each party would face with or without the injunction. *Precigen, Inc. v. Shuyuan Zhang*, No. GJH-20-1454, 2020 WL 3060398, at *2 (D. Md. June 9, 2020). As laid out above, absent the entry of the requested preliminary injunction,

12

IOMAXIS faces imminent and irreparable harm as a result of Hurysh's misappropriation of its trade secrets. This weighs heavily in favor of issuing the requested preliminary injunction. *Brightview Grp., LP*, 441 F. Supp. 3d at 142 (plaintiff "faces the prospect of suffering irreparable harm through the continued disclosure of its trade secrets, and through Defendants' wrongful utilization of [plaintiff]'s confidential and proprietary information … which heavily favors injunctive relief.")

By contrast, there is no real harm posed to Defendants. *See, e.g., Brightview Grp., LP*, 441 F. Supp. 3d at 141 ("If Defendants truly have no intent to use Brightview trade secret or proprietary information going forward, then enjoining their further use of Brightview information will not cause them any harm."). Neither of the Defendants has any legitimate interest in the trade secrets in their possession and, to the extent that the preliminary injunction somehow presents an inconvenience for them, it is of their own making. *Precigen, Inc.*, 2020 WL 3060398, at *2 (preliminary injunction issued where "it is Defendant's own deceptive and suspicious behavior that has caused this to be necessary. On the record as it currently stands, it appears that Defendant has left Plaintiffs with no recourse other than to seek this Order in order to protect its trade secrets"); *NaturaLawn of Am., Inc. v. West Grp., LLC*, 484 F. Supp. 2d 392, 402 (D. Md. 2007) (issuing preliminary injunction despite hardship for defendants where "defendants' hardships have been created by their own willful acts"). Furthermore, the preliminary injunction requested is extremely targeted and seeks only to prevent Hurysh and Hillcrest Farm from further copying and using IOMAXIS' trade secrets and from engaging in further spoliation. This, too, weighs strongly in favor of issuing the preliminary injunction. *Brightview Grp., LP*, 441 F. Supp. 3d at 142 ("the equities strongly favor" issuing the requested preliminary injunction where "the preliminary injunction considered here only restrains Defendants from using misappropriated [Plaintiff] trade

13

112134209

secret and proprietary information…"). The balance of hardships weighs strongly in favor of issuing the preliminary injunction.

### 4. The Preliminary Injunction Is in the Public Interest

It is well established that "the public interest favors the protection of trade secrets". *Brightview Grp., LP*, 441 F. Supp. 3d at 142. That interest is particularly strong where, as here, the preliminary injunction is sought because of the bad acts committed by the defendant. *Precigen, Inc.*, 2020 WL 3060398, at *1-2 (where, among other bad acts, "[a] forensic review of [Defendant]'s company-issued electronic devices also indicates that [Defendant], without authorization, reset his iPhone back to factory settings before returning it to [Plaintiff], removing all data and making it impossible to determine whether the device had been used to engage in any misappropriation of trade secret and confidential information," it was "Defendant's own deceptive and suspicious behavior that has caused this to be necessary" and "a temporary restraining order is in the public interest"). The preliminary injunction sought by IOMAXIS is in the public interest and should be granted. *See* Tillery Affirmation, Exhibit C.

### C. An Order Compelling Expedited Discovery Should Be Granted to Assist the Court in Ruling on the Preliminary Injunction

While the parties to a civil dispute are normally required to confer before engaging in discovery, the "Federal Rules of Civil Procedure allow courts to order expedited discovery in the form of document requests and depositions." *L'Occitane, Inc. v. Trans Source Logistics, Inc.*, No. CIVA WMN-09-CV-2499, 2009 WL 3746690, at *1 (D. Md. Nov. 2, 2009). *See also* Fed. R. Civ. P. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except ... when authorized ... by court order.") and 34(b)(2)(A) ("The party to whom the request is directed must respond in writing within 30 days after being served … . A shorter or longer time may be ... ordered by the court.") "'[A] standard based upon reasonableness

or good cause, taking into account the totality of the circumstances,' is the most appropriate for evaluating [an] expedited discovery request." *L'Occitane, Inc.*, 2009 WL 3746690, at *2 (quoting *Dimension Data N. Am., Inc. v. NetStar-1, Inc.*, 226 F.R.D. 528 (E.D.N.C. 2005)).

IOMAXIS now seeks to discover 1) the information, including proprietary information and trade secrets, Hurysh took from IOMAXIS; 2) the individuals with whom he has shared that information; and 3) how Hurysh has used the information. Such limited and targeted discovery is within the reasonable and good cause requirements for expedited discovery under the circumstances. Where, as here, a former employee copied confidential information, including financial records, personnel files and trade secrets, or deleted information concerning his activities from his employer's records, courts have directed the parties to engage in expedited discovery, particularly regarding the information and materials taken. *See, e.g., Teksystems, Inc.*, 2005 WL 8174397, at *3. *See also Open Text Corp. v. Grimes*, 262 F. Supp. 3d 278, 282 (D. Md. 2017); *SEA, Ltd. v. Cornetto*, 2018 WL 3009104, at *1 (D. Md. June 15, 2018). Moreover, "[e]xpedited discovery is particularly appropriate where a preliminary injunction is sought." *L'Occitane, Inc.*, 2009 WL 3746690, at *1. Because the discovery IOMAXIS seeks is reasonable, sought for good cause, and sought in connection with the preliminary injunction discussed above, IOMAXIS respectfully requests entry of an Order permitting it to serve limited, targeted requests for production and interrogatories directed to Defendants Hurysh and Hillcrest Farm, and a limited deposition from Hurysh, before the parties have conferred as required by Fed. R. Civ. P. 26(f). Tillery Affirmation, Exhibits C & D.

### IV. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests this Court grant its Motion and enter the attached Proposed Order for Preliminary Injunction and Expedited Discovery, and the Proposed Order to Show Cause in Action of Replevin.

112134209

Dated: December 24, 2020

                                    Respectfully submitted,

                                    */s/ John C. Lynch*
                                  John C. Lynch, Esq.
                                  M. Kelly Tillery, Esq.
                                  Mary Grace W. Metcalfe, Esq.