IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IOMAXIS, LLC, | * |
| Plaintiff, | * |
| v. | * Civil No. **20-3612 PJM** |
| NICHOLAS HURYSH, *et al.*, | * |
| Defendants. | * |

**MEMORANDUM OPINION**

Plaintiff IOMAXIS, LLC ("IOMAXIS") has brought this suit against its former employee Defendant Nicholas Hurysh ("Hurysh"), the sole owner and member of Defendant Hillcrest Farm LLC. IOMAXIS's alleges that Hurysh, who was previously employed by IOMAXIS, allegedly stole and retained various data and equipment belonging to IOMAXIS. The Complaint asserts claims for replevin; violations of the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*; and violations of the Maryland Uniform Trade Secrets Act, Md. Code Ann., Com. Law § 11-201 *et seq.* Compl., ECF No. 1.

Now before the Court are Plaintiff's Motion for Order to Show Cause, Preliminary Injunction, and Expedited Discovery, ECF No. 12, Defendants' Motion to Disqualify Counsel, ECF No. 15, and Defendant's Motion for Expedited Limited Discovery, ECF No. 33. For the following reasons, the Court **DENIES** the Motion to Disqualify, **GRANTS IN PART AND DENIES IN PART** both parties' motions for expedited discovery, **GRANTS** Plaintiff's Motion for Order to Show Cause, and **DEFERS RULING** on Plaintiff's Motion for Preliminary Injunction.

**I.     BACKGROUND**

Hurysh was employed as a senior network engineer at IOMAXIS from December 2004 to September 16, 2020. Compl. ¶¶ 14–16. He was responsible for setting up and maintaining many of the corporation's network devices, so that he had extensive knowledge of and access to IOMAXIS's

servers and the information stored therein. *Id.* ¶¶ 16–17.  Hurysh allegedly used his position and knowledge to access, download, copy, or otherwise acquire proprietary and confidential information, as well as physical personal equipment from IOMAXIS without authorization or approval.  *Id.* ¶¶ 18–19.

According to IOMAXIS, Hurysh unlawfully acquired and kept three categories of items: (1) confidential information and trade secrets; (2) domain names; and (3) equipment.  Hurysh allegedly created and kept a back-up of IOMAXIS's entire email and financial system and constructed, without authorization, an electronic network "tunnel" from Hillcrest Farm into the IOMAXIS financial system, giving him access to information technology and accounting systems, including confidential personal and proprietary information.  Compl. ¶¶ 20–24.  Hursyh allegedly remains in possession of, and in consequence has removed IOMAXIS's access to, 10 domain names that belong to and are used by IOMAXIS for business and secure communications. *Id.* ¶¶ 27–34. As a result, IOMAXIS is unable to control or maintain its own website or update required security certificates. *Id.*  ¶¶ 35–36.  Hurysh has also allegedly retained thousands of dollars' worth of physical property (technology and equipment) belonging to IOMAXIS. *Id.* ¶¶ 37–39. Hurysh claims (but IOMAXIS denies) that he has an ownership interest in one of the items. *Id.*

In addition, Hurysh allegedly disabled or deleted logs of the IOMAXIS accounting system which Hurysh was responsible for maintaining, which would show the information he accessed or acquired.  *Id.* ¶¶ 45–48. According to a digital forensic inspection, Hurysh is also believed to have deleted data from the infotainment tracking system on an IOMAXIS 2019 Ford F-150 truck, apparently for the purpose of destroying evidence. *Id.* ¶¶ 49–56.

On December 14, 2020, IOMAXIS filed its Complaint in this Court, followed by, on December 24, 2020, its Motion for Order to Show Cause, for Preliminary Injunction, and for Expedited Discovery. ECF No. 12.  Shortly thereafter, Defendants filed a motion to disqualify IOMAXIS's counsel, arguing

that Hurysh believed that Plaintiff's law firm, Troutman Sanders LLP ("Troutman"), previously represented him in a separate case, currently pending in North Carolina state court. *See id.* Then, on February 9, 2021, Defendants filed a Motion for Expedited Limited Discovery. ECF No. 33.

On February 10, 2021, the parties were referred to Magistrate Judge Simms for settlement discussions. ECF No. 35. Although Judge Simms mediated multiple settlement discussions between the parties, ECF Nos. 42, 43, 45–47, 49, in November 2021, the Court was informed that the parties had not reached an agreement. Then, on December 7, 2021, IOMAXIS requested that the Court hold an immediate hearing on its Motion for Order to Show Cause, for Preliminary Injunction, and for Expedited Discovery. Following a telephone conference with counsel, the Court issued a Temporary Restraining Order against Defendants, ECF No. 59. So the case now stands. The Court therefore considers the pending motions.

## II.     MOTION TO DISQUALIFY

### A. Standard of Review

The disqualification of counsel "is a drastic remedy since it deprives litigants of their right to freely choose their own counsel." *Gross v. SES Americom, Inc.,* 307 F.Supp.2d 719, 722 (D.Md.2004) (citing *Buckley v. Airshield Corp.,* 908 F.Supp. 299, 304 (D.Md.1995)). In considering a motion to disqualify, the court balances "the client's free choice of counsel and the maintenance of the highest ethical and professional standards in the legal community." *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 750 (D. Md. 1997) (citations and internal quotation marks omitted). When balancing these two interests, the court must "be mindful of its obligation to the public and to upholding integrity in the judicial system." *Buckley,* 908 F.Supp. at 304 (citing *Tessier v. Plastic Surgery Specialists, Inc.,* 731 F.Supp. 724, 724 (E.D.Va.1990)). But to protect litigants' right to select their own counsel, the moving party bears a "high standard of proof to show disqualification is warranted." *Buckley*, 908 F. Supp. at 304.

**B. Discussion**

The Maryland Rules of Professional Conduct ("MRPC"), adopted by the Court of Appeals of Maryland, also apply in this Court. Loc. R. 704 (D. Md. 2018). Although "violation of a Rule does not necessarily warrant any . . . non-disciplinary remedy, such as disqualification of an attorney in pending litigation, . . . [n]evertheless, in some circumstances, an attorney's violation of a Rule may be evidence of breach of the applicable standard of conduct." Md. Rule Prof. Cond. 19-300(20).

Defendants thus ask the Court to disqualify attorneys with Troutman because Troutman is purportedly in violation of Rule of Professional Conduct 19-301.9(a), barring representation contrary to a former client's interests in a substantially related matter without the former client's informed, written consent; Rule 19-301.9(c), prohibiting use or disclosure of information of a formerly represented client in a way adverse to the client's interests; and Rule 19-301.6, requiring consent from the former client before using confidential information regarding that client. Mot. to Disqualify ¶¶ 9–11. For these rules to apply, of course, Troutman must have previously represented Hurysh. The Court finds that the firm did not in fact represent him.

Defendants' Motion to Disqualify Counsel is linked to counsel's representation of IOMAXIS in *Howard v. IOMAXIS, LLC et al.*, No. 18-cvs-11679, presently pending before the North Carolina Special Superior Court for Complex Business Case (hereinafter the "North Carolina case"). The North Carolina case involves a claim by the trust of a deceased one-time part owner of IOMAXIS against IOMAXIS regarding the value of that owner's interest in IOMAXIS. In that case, IOMAXIS has been represented primarily by attorneys from the law firm Holland & Knight LLP ("H&K"), although attorneys with Troutman, IOMAXIS's counsel in the present case, have also participated on behalf of IOMAXIS.

According to Defendants, although H&K has acted as lead counsel in the North Carolina case, Troutman attorneys have been involved in meetings, calls, and email correspondence related to the

matter. Mot. to Disqualify ¶ 3. Hurysh, as an employee of IOMAXIS, believes that Troutman represented him in the North Carolina case and that he was Troutman's client. Defendants in fact claim that IOMAXIS attempted to terminate his employment because of issues he raised in the North Carolina case (including potential wrongdoing in by IOMAXIS) and that the case before this Court is therefore substantially related to the North Carolina case. *Id.* ¶¶ 7–8 (citing Hurysh Affidavit ¶¶ 8–9).

Plaintiff argues that Troutman has never represented Hurysh and that no attorney-client relationship ever existed between the firm and Hurysh. Opp'n at 1. Plaintiff further states that, even if Troutman had represented Hurysh in the North Carolina case, Defendants have failed to show that the North Carolina case is "substantially related" to the case before this Court. Opp'n at 9–11. The Court finds Plaintiff has the better part of the argument.

Under MRPC 19-301.13, "[a]n attorney employed or retained by an organization represents the organization acting through its duly authorized constituents." The Maryland Court of Appeals has "acknowledge[d] that determining 'what constitutes an attorney-client relationship is a rather elusive concept*." Penn. Nat'l Mut. Cas. Ins. Co. v. Perlberg*, 819 F. Supp. 2d 449, 453–54 (D. Md. 2011) (internal citations and quotations omitted). "Such a relationship may arise through an explicit agreement or 'by implication from a client's reasonable expectation of legal representation and the attorney's failure to dispel those expectations.'" *Id.*

Here, Hurysh and his corporate Co-Defendant, apart from mere say-so, present no evidence that Troutman represented Hurysh's interests in the North Carolina case. Hurysh does not aver that he signed an engagement letter with Troutman, nor does he argue that he ever received communications from Troutman attorneys regarding his personal interests. Hurysh says only that, because he was copied on emails regarding the North Carolina case, he was one of Troutman's clients. *See* Reply in Supp. of Mot. to Disqualify, ECF No. 25, at 3–4. Beyond these brief communications regarding the defense of IOMAXIS in the North Carolina case, Defendants provide no plausible explanation for what

5

may have given Hurysh the impression that Troutman represented his personal interests. Nor have Defendants identified any confidential information that Troutman could have received qua Hurysh's putative attorney. No hearing on the matter is necessary. *See* Local Rule 105.6 (D. Md. 2021). The Court concludes that no attorney-client relationship ever existed between Troutman and Hurysh and the inquiry could well cease as to this point.

But lest there be any doubt: Assuming an attorney-client relationship ever existed between Troutman and Hurysh, Defendants still fail to satisfy the heavy burden for establishing disqualification because they have not shown that the North Carolina case is a "substantially related matter" to the case before this Court. The focus of the substantial-relationship inquiry is "the factual nexus between the earlier representation and the present, adverse representation." *Blumenthal Power Co., Inc. v. Browning–Ferris, Inc.,* 903 F.Supp. 901, 902 (D. Md. 1995) (citation omitted). In determining whether a former and current matter are "substantially related," the court examines the scope and nature of the prior and present representations. *Buckley*, 908 F. Supp. at 304. "It is not necessary that the two lawsuits involve the same operative facts, so long as there is a sufficient similarity of issue." *See Stratagene v. Invitrogen Corp.*, 225 F. Supp. 2d 608, 611 (D. Md. 2002).

Notwithstanding the fact that the North Carolina case is an estate action seeking valuation of an ownership interest and this case is an action for replevin of certain information, property, and equipment, Defendants suggest that the cases are "substantially similar" because the present case "would not exist but for the North Carolina case." Reply to Mot. Disqualify, ECF No. 25, at 9. Hurysh claims that IOMAXIS sought to terminate him following his accusations of misconduct during discovery in the North Carolina case. *Id.* Well that might be, but at bottom it is irrelevant. Here, the unalterable fact is that IOMAXIS simply seeks the identification of data and return of property allegedly taken by Hurysh, while in the North Carolina case the estate of a former partial owner of IOMAXIS seeks to establish the value of the decedent's interest. Moreover, the allegations in the

present case concern Hurysh's conduct after his employment with IOMAXIS ended.  At most, Troutman may have been aware of Hurysh's accusations of misconduct on the part of some IOMAXIS employees, but this in no way launched the Troutman firm into a professional relationship with Hurysh.

In any case, it is hardly likely that confidences regarding Hurysh's reasons for possession or retention of IOMAXIS's information, trade secrets, domain names, or equipment, would have been disclosed to Troutman as part of the North Carolina case.

Accordingly, the Court **DENIES** Defendants' Motion to Disqualify.

### III.     MOTIONS FOR LIMITED EXPEDITED DISCOVERY

The Federal Rules of Civil Procedure allow courts to order expedited discovery in the form of document requests and depositions.  *See* Fed. R. Civ. P. 26(d) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except ... when authorized ... by court order.").  *See also* Fed. R. Civ. P. 30(a), 33(b), 34(b), and 36 (giving courts the power to adjust the discovery timing requirements imposed under Rule 26(d) and, if warranted, to expedite the time for responding to discovery).  Expedited discovery is particularly appropriate where a preliminary injunction is sought. *See e.g., Ciena Corp. v. Jarrard,* 203 F.3d 312, 324 (4th Cir.2000) (remanding with instructions to the lower court to provide the defendant with an opportunity to conduct expedited discovery in order to file a motion to dissolve a preliminary injunction); *Dan River, Inc. v. Unitex Ltd.,* 624 F.2d 1216, 1220 (4th Cir.1980) (stating that the district court "set a hearing on the motion for a preliminary injunction and directed the parties to engage in discovery on an expedited basis prior to that hearing.").  In reviewing requests for expedited discovery, courts have adopted a reasonableness standard, "determining whether the request is supported by good cause, considering the totality of the circumstances."  *Brightview Grp., LP v. Teeters*, No. CV SAG-19-2774, 2019 WL 11660174, at *1 (D. Md. Nov. 6, 2019) (citing *L'Occitane, Inc. v. Trans Source Logistics, Inc.*, No. WMN-09-CV-2499, 2009 WL 3746690, at *1 (D. Md. Nov. 2, 2009)). "Even where good cause exists, the discovery request

must be narrowly tailored to obtain information relevant to a preliminary injunction determination." *Id.* (internal citations and quotations omitted).

IOMAXIS seeks discovery of three categories of information it believes will support its Motion for Preliminary Injunction: 1) the information, including proprietary information and trade secrets Hurysh allegedly took from IOMAXIS; 2) the names of individuals with whom he has shared that information, if any, and what information has been shared; and 3) how Hurysh may have used the information in any other respect. ECF No. 21-1 at 15. Defendants do not oppose the request for expedited discovery, but instead ask the Court to allow it to serve interrogatories and requests for documents to support its opposition to IOMAXIS's Motion. ECF No. 33. Plaintiff's requested discovery is tailored to obtain information relevant to a determination of whether Defendants should be enjoined from disseminating information allegedly belonging to IOMAXIS. In this respect, the Court will exercise its discretion under Rule 26 and direct the parties to engage in discovery on an expedited basis prior to the hearing on the Motion for Preliminary Injunction. The parties shall have sixty (60) days to engage in limited discovery, the scope of which shall be controlled by the categories of information, property, and equipment identified in IOMAXIS's Motion.

Finally, the Court will deny Defendants' Motion for Limited Expedited Discovery insofar as they seek discovery related to Troutman's possible representation of Hurysh. That request is moot in light of the Court's denial of the Motion to Disqualify. Defendants have failed to show that an attorney-client relationship ever existed between Troutman and Hurysh or that the North Carolina case is substantially similar to the present case.

### IV.

For the foregoing reasons, Defendants' Motion to Disqualify, ECF No. 15, is **DENIED**. Plaintiff's Motion for an Order to Show Cause, Preliminary Injunction, and Expedited Discovery, ECF No. 12, is **GRANTED IN PART** and **DEFERRED IN PART**.

Defendants shall **SHOW CAUSE** on Tuesday, March 29, 2022, in this Court, why Plaintiffs' Motion for Preliminary Injunction should not be granted.

Defendants' Motion for Expedited Discovery, ECF No. 33, is **GRANTED IN PART**.

The discovery motions are **GRANTED** in that the Court **DIRECTS** the parties to complete expedited discovery within sixty (60) days of the date of this order. Expedited discovery shall be limited to the following topics: (i) specific information Hurysh allegedly took from IOMAXIS; (ii) any and all individuals with whom Hurysh has shared that information; and (iii) any other ways in which Hurysh may have used the information.

Defendants' Motion to Expedite Discovery is **MOOT** in all other respects.

A separate Order will **ISSUE**.

**Date: January 20, 2022**

_____
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**